Good afternoon, Your Honors. My name is Jennifer Peabody, and I represent the appellant John Alcantara. In this case, Mr. Bennett disappeared from work on February 16, 1983 and was presumed dead after a large quantity of blood matching his blood type was found in the field where he was last seen with Mr. Alcantara. From the very beginning, Mr. Alcantara was the sole and only suspect in the murder. He was the last person to be seen with Mr. Bennett. Mr. Bennett was supposed to reprimand him about his performance at work. Blood was found in the area where Mr. Alcantara and Mr. Bennett were last seen. My problem with this, with your argument, is it's all about pre-indictment delay. It is. And that's really different from the speedy trial analysis that we had in the case just before before yours. The thing about pre-trial delay is usually where it's not as grave a crime as this one, the statute of limitations takes care of it. Where it doesn't, the whole idea of no statute of limitations is that if you murder somebody, it's supposed to hang over your head for the rest of your life if you haven't been caught yet. It's not supposed to disappear until you're dead yourself. And since one of the two participants in the crime, in your average murder, is dead and can't testify, there's often a very long delay before there's enough evidence to indict anyone. That's why they have cold case units. In this one, I don't really see where the justification for the delay would not outweigh whatever prejudice there might be, nor does it appear that there is much. I just don't get it. Of course, this case is very different from post-indictment delay, and the law is different. But where you still have to do the balancing of factors, you still have to look at the prejudice suffered by... And on your prejudice, it looks like it's speculative. There really isn't any demonstration of any prejudice. You don't have proof that the dead guy would have been a favorable witness, really? I can't see anything. We know that Mr. Davis, Mike Davis, who died before trial, we know what he told the police. He told the police that he and Mr. Alcantara picked up some trees and brush and went and dumped the load at the landfill. We know that that's what he said. And he died, so we don't know what else he would have said. But from what we do know, it's not speculative to believe that he would be able to undermine the prosecution's theory based on his statements to police. Sure it is. I mean, one possibility is that he would have said, no, that's all we did, just like I told the police. Another possibility is he says, look, I can't talk to you unless I get immunity, and they give it to him. And then he says, what we did is we murdered Alcantara's boss, and thank you very much for the immunity. And he gets impeached because of the immunity deal, and the jury decides what's true. And that's a possibility, and that's all speculative. The problem is... Other possibilities, he just says, I'm not going to testify because of the Fifth Amendment. So I don't see why the possibility that he would have said, well, we just dumped some brush and that's all we did, is more than speculative. I mean, when a case is delayed 22 years, it's all the defense has. We can't go back and recreate Mr. Davis and revive him from the dead and make him say something. It's all the defense has. Is it your position that the DA's office should have filed the prosecution right after they investigated the matter? Was it in 1983? It was in 1983. They closed the case in 1983. So what do you say, is that your argument that that was negligent or something, or that it was improper to close the case? Yes, or at least reopen it before 2001. It wasn't touched between Mr. Alcantara was the sole suspect. Well, they suspected him for the start for good reason. He sounds like an awful person who would be just the sort to do this sort of thing, but it sounds like they just didn't have enough evidence. Nobody snitched him out, and they didn't really, they didn't have a body, they didn't have anything. That is correct, but he was the last person seen with them. There was human blood found on his shoes. I don't think you can indict somebody for murder because he's the last person seen with somebody. Oh, there's a lot more than just being seen with them. He was the last person seen with them. They drove out into the brush at the Whittier Narrows facility. Blood was found in the exact location. Mr. Alcantara was seen running along the side of the road, profusely sweating, and came up with the story that he was spraying Roundup in the area. They found blood in the truck, the dump truck that was supposedly used to dispose of the body that matched the type of Mr. Bennett's blood. They found human blood on Mr. Alcantara's shoes. So it wasn't just, the evidence that they had in 2001 and 2004 and ultimately in 2005 is evidence that was all available in 1983. They did have something, and it was certainly enough to suspect. It might have been enough or might not have been for probable cause, but there would have been a high risk of acquittal from a prosecutor's standpoint. Or at least they determined there was a risk of acquittal in their judgment. In their judgment, and it is our position that that judgment was negligent. I mean, every single thing that they gathered between 2001, when they reopened the case for a short period of time, and then 2004 until Mr. Alcantara was charged in 2005, all of that evidence existed. It was all there. Everything they got came from sanitation employees or Mr. Alcantara's wife. Mr. Alcantara's wife, well at the time she called the police, they were no longer together, but her name and number was in the personnel files. The police could have found it. Every single witness that testified at trial worked at the sanitation department. They did interview some of those witnesses at the sanitation place, whatever it was. The witnesses were not all forthcoming. They only interviewed a few of the witnesses, and I think the witness that you're probably referring to that may not have been completely forthcoming was David Rivas, who was a crucial witness. I think they didn't even know if they had a murder then, did they? I think Alcantara suggested that his boss had run off with his girlfriend. He did suggest that. They couldn't find a body? He did suggest that. They couldn't find a body, so they don't even know if they're investigating a murder at that point. Well, based on the amount of blood that was found in the location, they believed that there was a homicide or some type of It was a large quantity of blood that was in the location where they thought he disappeared from. But between 1983 and 2001, the case sat on the shelves, and nobody looked at it. Meanwhile, all of the evidence that was potentially favorable to the client was destroyed. His potential alibi witness to undermine the prosecution's theory had died. By the time of trial, this was a Everyone had to either have their memory refreshed with the police report, and in a lot of cases, that didn't even work. And the witnesses' statements had to be read in through the police officer's reports, who themselves had to refresh their memory with the statements. So given all the time, there was no ability to cross-examine or gather any evidence that would undermine the prosecution's theory, and that is because they let the case languish despite the fact that there was evidence connecting Mr. Alcantara, which is the same evidence that was used at trial. Why don't you save the balance of your time for rebuttal? Perfect. Thank you. Good morning. May it please the Court, Deputy Attorney General Ana Duarte, for respondent. Your Honor, we ask that this Court affirm the District Court's judgment because the California Court of Appeals' rejection of each claim was neither contrary to nor an unreasonable application of clearly established federal law, as interpreted by the Supreme Court, nor was it an unreasonable... What about the blood? Oh, well, the blood evidence, meaning that that was enough justification to... enough probable cause to have brought a murder prosecution? Whether it was or not enough to indict Alcantara, why wouldn't that be enough to interview everybody else and call up the wife, hopefully, from a prosecutor's standpoint, an ex-wife? Well, Your Honor, there were many, many interviews of people that... Petitioner's co-workers, and it is true that Petitioner was a suspect at the time. It seemed pretty obvious they were kind of dodging around and avoiding being entirely forthcoming, and then they find the blood. Yes, and it's a substantial amount. He is the last person seen with him. But remember, the body was never found, and it wasn't until 2000... And at that time, the prosecution in 1983, after it interviewed all the people, yes, the blood was found, and the things that Petitioner cites to exist in the record. However... Where was the blood found again? It was found in the jungle area, and it was an area where Petitioner admitted to police that he had been in the day before when he went with Bennett. The blood on the shoe was apparently so small that no determination could be made as to it, only that it was human. So they couldn't tie the blood on his shoe to the dead person? No, absolutely not. And I think that what is really important here is that the it wasn't until Hatton revealed information in 2004, during the police interview, that Petitioner had confessed to killing him, that it was for sure that he was not out somewhere, as Petitioner had tried to start a rumor in 1983 that Mr. Bennett had a girlfriend and perhaps had left his family. But I think that the most important thing here is, I know that Petitioner focuses on the prejudice prong, it has to be actual prejudice, not speculation. The courts here have found that it was all speculative. But assuming he showed some prejudice, when we talk about the justification for the delay, because under Lovasco you have to have both, Petitioner claims that mere negligence, and I'm not conceding that there was any negligence, but he says that mere negligence would be sufficient to find that it was an accident. So they made a determination after they did their investigation in 1983 that they weren't going to file an information or whatever complaint or go to the grand jury or anything like that. They put it aside. Right? They did. The leads ran cold. There was nobody. No one came forward. So does he have an obligation? Instead of letting it sit for how many years did it sit before then? I don't know. I don't know what happened between 1983 when the investigation stopped until 2001. I don't know what happened between that because there's nothing in the record. Let me ask you this. Is there any obligation? I mean, it seems like at least periodically they should call up the witnesses and say, hey. Well, I think that. We're still looking at this. Absolutely. But I also think that prosecutorial agencies have limited budgets and crimes occur every single day and when leads go cold, I think resources are evaluated and they're spent on the cases where usable leads can be followed. What's the current status of the law on whether negligent delay is enough to get relief for the appellant or whether it has to be culpable delay? Well, I was trying to get there, Your Honor. Even though he claims that negligence would be enough, it wouldn't. Under Lovasco and Marion, if we read those together or just Lovasco by itself, the delay would have to be unjustified. And an unjustified delay is only an intentional delay intended to gain a tactical advantage. And at the very least, he would have to show that the prosecution. Which case says that? Lovasco. And at the very least, he would have to show a reckless disregard on the part of the prosecution of information that they knew that somehow this delay would be detrimental to his case. And notably in Marion and Lovasco, the two cases the Supreme Court has decided where it has considered this issue. And neither did they find that the pre-indictment delay warranted dismissal of the charges. And there have been very few cases in which that has occurred. Namely because investigative delay is not seen as tactical and it's not acting in reckless disregard. So for this reason, I think that Petitioner's claim must fail. He could not meet, even if he could meet some prejudice or show some prejudice, he cannot show that the investigative delay here was for an unjustified, was an unjustified reason. So. Alito Is it, is it pretty clear that the delay has to be culpable? I mean, sometimes you see that some guy is going to die or you're going to be deporting somebody, so the prosecutor waits to indict until the defense witness is gone. I think we had a case, Kajian or Kolfian or something, where they did that. I'm not familiar with that case, Your Honor, but I think Lovasco says specifically prosecutors are not, are under no duty to file charges as soon as probable cause exists, but before they are satisfied that they will be able to establish the suspect's guilt beyond a reasonable doubt. Here, the trial court found, the court of appeal agreed, and so did the district court, that the prosecutor filed charges as soon as it believed that it could obtain a conviction in this case. Let me, let me, let me ask you about something that I think is coming and it'll be analogous. Well, I don't, I shouldn't say I think it's coming, it may come. Right now, my guess is that the feds are, by and large, not indicting for a lot of marijuana offenses in states that have done all they could to legalize marijuana, but since the statute is still there and there hadn't been any federal repeal of the statute, I can imagine that if public sentiment changes, the reporters start writing scare stories, somebody, something horrible happened to them because of marijuana, then they may start indicting, and it could have been a purely political reason for the delay, but not to obtain advantage in a particular criminal case just because they preferred not to prosecute marijuana cases when public sentiment was against prosecuting them, and they preferred to prosecute them when public sentiment was for prosecuting them. What happens to that kind of pre-indictment would still have to show, I'm not a federal prosecutor, so, but the defendants would still have to show that they were actually prejudiced. There are very few cases, that's a very heavy burden to me. Secondly, it's not tactical in order to gain an advantage in the prosecution, it's about the interest that society has in that. I was wondering what kind of, here it looks to me like law enforcement was maybe kind of sloppy, I mean, any personal injury or wrongful death case, first thing you look for is an ex-wife, they're just wonderful. But Your Honor, this woman was not Petitioner's ex-wife. At that time. At that time, he was merely his girlfriend, I don't even know that they lived together, she was his contact person in case of an emergency, nothing had happened to him, the police had no reason to call her, and she didn't even come forward to reveal the confession to her until after he was arrested, she saw the arrest on television, and it was not until after that that she contacted the police. And then she called the cops and said, oh yeah, he told me. He must have been a great husband. So, but I think, if I may get back to your question, delay doesn't only hamper a defendant's ability to prosecute, it also hampers the prosecution's ability to prove a case. So, I think that also has to weigh here. And I'm not sure that I answered your question, but I think that this case is very different from what you've posited, and that the Court of Appeals decision was objectively unreasonable, I mean, not objectively unreasonable. Okay. I will submit unless you have more questions. Thank you. Thank you. You had about a minute and a half. Just briefly, it's the appellant's position that Lovasco doesn't, in fact, say that only intentionality will meet the burden for a pre-indictment speedy trial or due process violation. In fact, Lovasco leaves open the possibility that whether or not something violates the due process really needs to be left to the lower courts. And Lovasco came after Marion, and I would agree that in Marion the court did require intentionality, but in Lovasco, which followed, it did not. It said that whether or not something violates due process is something that needs to be left to the lower courts. And this court, the Ninth Circuit, has recognized the problems associated with the per se requirement that you show always intentionality, because that requires being a mind reader of a prosecutor. It's going to be almost impossible for any defendant to show intentionality without getting inside the prosecutor's mind. So in some cases, negligence is going to be enough, just as it is enough in post-indictment speedy trial questions. And negligence weighs a little less than intentionality, but it is something that the court can consider and weigh the prejudice versus the negligent operations of the police department. And in this case, the police were negligent and sloppy and possibly a little bit lazy. And we submit that the district court's decision should be reversed. Okay. Thank you, counsel. We appreciate your arguments. Interesting case. The matter is submitted at this time, and that ends our session for today and for the week. We're done.
judges: Christensen, Kleinfeld, Paez